HARRIS et al., Appellants,

v.

TIGNER, Appellee.

[Cite as *Harris v. Tigner* (1995), 108 Ohio App.3d 152.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68896.

Decided Dec. 29, 1995.

*Michael J. O'Shea Co., L.P.A.,* and *Michael J. O'Shea,* for appellants.

*Cox & Associates* and *Vicki Lynn Ward,* for appellee.

---

*Per Curiam.*

An accelerated appeal is authorized pursuant to App.R. 11.1 and Loc.App.R. 25. The purpose of an accelerated docket is to allow an appellate court to render a brief and conclusionary decision. *Crawford v. Eastland Shopping Mall Assn.* (1983), 11 Ohio App.3d 158, 11 OBR 240, 463 N.E.2d 655; App.R. 11.1(E).

The plaintiffs-appellants, Vernell Harris and her daughter Erica Harris, lived in a home leased from the defendant-appellee, James Tigner. On October 25, 1992, Erica Harris was admitted to Mt. Sinai Hospital with a lead paint levels of 68 μg/dl.[1] The city of Cleveland issued a citation to the appellee which indicated the presence of loose or flaking paint with a high lead content. The citation stated that this serious health hazard was a violation of the city health codes and required the appellee to correct the hazard.

The appellee repaired the inside of the home and a health inspector indicated that the home was safe for the return of the child. In May 1993, Erica Harris was rehospitalized with lead levels of 50 μg/dl. In their complaint the appellants alleged that the appellee had violated his duty to inspect and/or maintain the premises and that he had violated R.C. Chapter 5321.

Cross-motions for summary judgment were filed, and the trial court granted the appellee's motion.

The appellants set forth one assignment of error:

"The trial court erred in granting defendant's motion for summary judgment and overruling plaintiffs' motion for summary judgment based upon a 'notice' requirement."

---

1. Dr. Landry Harris states in her letter attached as evidence to the appellants' motion for summary judgment that according to the Center for Disease Control guidelines, a blood level of 10 μg/dl is considered toxic.

A summary judgment is appropriately rendered when no genuine issue as to any material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come but to one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267 and *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. The nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.

In the case *sub judice*, the appellants argue that the appellee violated R.C. 5321.04 by failing to maintain and inspect the residence with regard to lead paint. The appellants also argue that the tests set forth by the Supreme Court in *Shroades v. Rental Homes, Inc.* (1981), 68 Ohio St.2d 20, 22 O.O.3d 152, 427 N.E.2d 774, should not apply where the issue is one of habitability. The appellants distinguish conditions which develop quickly and unexpectedly, such as a broken guardrail, window or step, from those conditions which result from allowing the premises to slowly deteriorate.

The appellants have cited no authority for this contention. Thus, all the requirements set forth in *Shroades* apply.

The appellee argues that the issue herein is simply one of notice and that since the appellee did not receive notice of the defect as required under *Shroades, supra,* he is not liable for the injuries suffered by Erica Harris. In *Shroades,* the Supreme Court specifically held:

"Also it must be shown that the landlord received notice of the defective condition of the rental premises, that the landlord *knew* of the defect or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord." (Emphasis added.) *Id.,* 68 Ohio St.2d at 25–26, 22 O.O.3d at 155, 427 N.E.2d at 778.

The appellee apparently contends that notice, actual or constructive, must be given by the tenant to the landlord. However, the Supreme Court has left open a third option: the landlord will be held liable for the tenant's injuries where there is a violation of R.C. 5321.04, the injuries were proximately caused by the landlord, and the landlord *knew* of the defect.

Twice in his deposition the appellee demonstrated his knowledge of the lead-based paint:

"Q. Mr. Tigner, at the time—or prior to Vernel [*sic*, Vernell] Harris moving in, if you can recall, what did you know about lead paint?

"A. Nothing.

"Q. Okay. Have you ever heard of the dangers of lead paint?

"A. Yeah, I've heard of it.

"Q. In the paper or something like that or the news?

"A. I heard a little bit about it from somebody talking about the older houses having it. I heard that.

"Q. Okay. Prior to Miss—after, rather, Miss Price moving out, and prior to Vernel Harris moving in, did you have the house inspected for lead paint?

"A. No.

" * * *

"Q. Knowing what you knew about lead paint, generally, why didn't you have Vernel Harris' unit inspected prior to Vernel and her children moving in?

"A. I knew nothing about paint. Lead paint for a child's—every house on that street's got lead on it.

"Q. Okay.

"A. You can get all the cases you want, just go down there.

"Q. Okay.

"A. It probably should be done. I'm not saying it shouldn't be done. I didn't know anything about it.

"Q. Okay. My question to you is, why didn't you have the house inspected, though?

"A. You don't do that with cheap rent. You can't do it."

When viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, the appellee's deposition testimony makes it quite clear that he was aware the home he rented to the appellants surely contained lead paint. It is equally clear that the appellee, for economic reasons, chose not to remedy the defective condition and instead rented the house to a woman with a small child who would be particularly susceptible to the damages of lead paint.

The appellants' assignment of error is well taken.

The judgment is reversed, and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

JAMES D. SWEENEY, P.J., and MATIA, J., concur.

O'DONNELL, J., dissents.

O'DONNELL, Judge, dissenting.

I do not agree with the conclusion reached by the majority in this case.

A more detailed factual statement reveals that in October 1991, James Tigner, a resident of Greenville, Georgia, leased premises at 2949 East 81st Street in Cleveland, Ohio, to Vernell Harris and her three minor children. Sometime during October 1992, three-year-old Erica, one of her children, was admitted to Mt. Sinai Hospital for excessive lead levels and ingestion of paint chips. Thereafter, on October 28, 1992, the city of Cleveland inspected the premises and issued a notice to Tigner at his home in Georgia listing areas where paint hazards existed on the premises.

In compliance with the notice, Tigner, from Georgia, hired a painter to complete work on the home, and after a November 1992 city health inspector approved the interior of the premises, the child was returned to the home.

In May 1993, Erica again presented at Mt. Sinai Hospital with a 50 µg/dl lead level.

While the majority believes the trial judge erred in granting summary judgment for the landlord in this case, I do not.

A landlord is required to meet certain obligations under R.C. 5321.04(A), including:

"(1) Comply with the requirements of all applicable building, housing, health, and safety codes which materially affect health and safety;

"(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition * * *."

In *Shroades v. Rental Homes, Inc.* (1981), 68 Ohio St.2d 20, 22 O.O.3d 152, 427 N.E.2d 774, the Ohio Supreme Court addressed these statutory duties and concluded that failure to meet these obligations amounted to negligence *per se.* "However, in addition to negligence *per se,* proximate cause for the injuries sustained must be established. Also it must be shown that the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord." (Citations omitted.) *Id.* at 25–26, 22 O.O.3d at 155, 427 N.E.2d at 778.

*Shroades,* then, clearly dictates that in addition to negligence *per se* and causation, we must find that the landlord had notice of a defect or that a tenant made a reasonable attempt to give such notice before liability attaches to

landlords for injuries sustained from defective conditions. In this case, therefore, we must determine whether Tigner had any notice of the lead paint problems at the premises prior to renting the property to Harris.

The notice issued by the city of Cleveland on October 28, 1992 evidenced that Tigner had violated R.C. 5321.04(A), constituting negligence *per se.* Furthermore, Harris presented evidence that the existence of lead-based paint on the premises proximately caused the injury to Erica. However, Harris presented no evidence to suggest that Tigner received notice of the defective condition of the premises, knew of any such defect, or that Harris had made any attempts to notify Tigner as required by *Shroades, supra, prior to injury to Erica.*

Even the quoted portions of Tigner's deposition cited by the majority reveal lack of notice.

"I know nothing about paint. * * *

" * * *

"It probably should be done. I'm not saying it shouldn't be done. *I didn't know anything about it.*" (Emphasis added.)

The tenant's burden of proof in this situation is governed by *Shroades, supra:*

"[I]t must be shown that the landlord received notice of the defective condition of the rental premises * * *." *Id.,* 68 Ohio St.2d at 25–26, 22 O.O.3d at 155, 427 N.E.2d at 778.

I do not believe that the evidence shows that Tigner received notice of the defect prior to the injury to Erica. Once notified by the city, the landlord fully complied to the satisfaction of the city's health inspector. I do not find any genuine issue of material fact in issue and, pursuant to R.C. 5321.04 and *Shroades v. Rental Homes,* the appellee landlord is entitled to judgment as a matter of law. Accordingly, I would affirm the judgment of the trial court in this case.